Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| BÁEZ PÉREZ, INC., H/N/C JOYERÍA MONTE PIEDAD Y/O CASHEX y otros<br><br>Recurridos<br><br>v.<br><br>RANGER AMERICAN OF PUERTO RICO, INC., y otros<br><br>Peticionario | KLCE202400583 | *Certiorari* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios<br><br>Caso Núm.: SJ2020CV03441 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2024.

El 28 de mayo de 2024, *Ranger American of Puerto Rico, Inc.* (en adelante, "Ranger American o peticionario–demandado") recurrió ante nos para que revisemos la *Orden* emitida y notificada el 26 de abril de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante; "TPI"). En esta, el TPI declaró *No Ha Lugar* la solicitud de reconsideración presentada por el peticionario– demandado referente a la determinación de la sentencia sumaria.

Adicionalmente, Ranger American nos solicita que revisemos la *Orden* emitida el 30 de abril de 2024. En la cual, el TPI mantuvo la exclusión tanto del documento como de la defensa afirmativa por haber sido presentadas tardíamente.

Evaluados los escritos de las partes comparecientes, **denegamos** el auto solicitado.

**-I-**

El **3 de julio de 2020**, Báez Pérez Inc. h/n/c Joyería Monte Piedad y/o Cashex y otros (en adelante, "Báez Pérez Inc., o recurridos–demandantes") presentaron una demanda de incumplimiento contractual y daños contra Ranger American y otros.[1] Reclamaron los siguientes montos:  pérdida de inventario y daños a la propiedad mueble e inmueble valorados en no menos de $340,000.00; quebrantamiento de reputación comercial valorada en no menos de $200,000.00; pérdidas de ingresos valoradas en no menos de $6,000.00 mensuales desde el 1 de noviembre de 2019; perdida de os ahorros personales de la familia Báez, por no menos de $100,000.00; y daños emocionales de la familia Báez valorados en no menos de $300,000.00.

Por su parte, Ranger American contestó la demanda el **18 de agosto de 2020**.[2] En síntesis, adujo haber cumplido con su responsabilidad contractual y negó la responsabilidad, pues sus oficiales actuaron de forma adecuada y razonable ante el incidente de hurto contra Báez Pérez Inc.

Así, el **29 de septiembre de 2020**, el TPI celebró una Vista Inicial, en la cual surgió que las partes habían comenzado el descubrimiento de prueba.[3]

Tras varias incidencias procesales, el **22 de septiembre de 2023** las partes presentaron el *"Informe Preliminar entre Abogados para la Vista Con Antelación a Juicio"*.[4] En dicho informe, los recurridos–demandantes alegaron que el 20 de septiembre de 2023, Ranger American les produjo por primera vez, la segunda página del contrato entre las partes.[5] Arguyeron que dicha página contenía una cláusula de limitación de responsabilidad, la cual no fue objeto de

---

[1] Apéndice 2 del Recurso de *Certiorari*, págs. 2 – 11.
[2] Apéndice 3 del Recurso de *Certiorari*, págs. 12 – 23.
[3] Apéndice 4 del Recurso de *Certiorari*, págs. 24 – 25.
[4] Apéndice 51 del Recurso de *Certiorari*, págs. 163 – 195.
[5] *Íd.*, a la pág. 194.

descubrimiento de prueba. Además, señalaron que la referida página no contenía las firmas ni marcas de identificación.

El TPI emitió una *Orden* el **30 de octubre de 2023** señalando el Juicio en su fondo para los días 6 y 13 de mayo de 2024.[6]

El **10 de noviembre de 2023**, Ranger American presentó una solicitud de sentencia sumaria.[7] Alegó que habían 42 hechos que no estaban en controversia y sometió una serie de documentos para sustentarlos. Luego de una prórroga, el **22 de diciembre de 2023** los recurridos–demandantes se opusieron.[8]

Además, ese mismo día **22 de diciembre de 2023**, los recurridos–demandantes solicitaron la exclusión de la segunda página del contrato entre las partes, alegaron que la misma fue presentada tardíamente.[9] Por lo que el **23 de enero de 2024** Ranger American se opuso.[10] En síntesis, alegó que el contrato se discutió o mencionó en diferentes instancias, por lo que la contra parte no puede alegar su desconocimiento.

Trabada ahí la controversia, el TPI emitió la Resolución recurrida el **8 de abril de 2024**,[11] en la cual esbozó las siguientes determinaciones de hechos:

1. *Manuel Báez Vega figura como presidente de Báez Pérez, Inc. según el Departamento de Estado.*
2. *Báez Pérez Inc. se dedica a joyerías y casas de empeño, en dos localidades, una en la Avenida Fernández Juncos y una en Barrio Obrero.*
3. *Manuel Báez Vega fue Presidente de In Pigno, pero vendió la corporación entre 2018-2019.*
4. *Ranger American es una corporación debidamente autorizada para hacer negocios en Puerto Rico.*
5. *Para noviembre y diciembre de 2019, existía un contrato entre Ranger y Báez Perez, Inc. h/n/c Joyería Monte Piedad (en adelante "el contrato").*
6. *El contrato entre las partes requería que Ranger brindara servicios de escolta al cierre de operaciones, monitoreo mientras el sistema estuviera armado y patrullaje.*
7. *En la madrugada del 30 de noviembre del 2019 al 1 de diciembre de dicho año, a alrededor de las 5:00 p.m., Ranger recibió una alerta de alarma proveniente del local*

---

[6] Apéndice 55 del Recurso de *Certiorari*, págs. 200 – 202.
[7] Apéndice 57 del Recurso de *Certiorari*, págs. 210 – 803.
[8] Apéndice 63 del Recurso de *Certiorari*, págs. 832 – 1096.
[9] Apéndice 62 del Recurso de *Certiorari*, págs. 815 – 831.
[10] Apéndice 65 del Recurso de *Certiorari*, págs. 1099 – 1335.
[11] Apéndice 68 del Recurso de *Certiorari*, págs. 1341 – 1352.

de Báez Pérez, Inc. h/n/c Joyería Monte Piedad (en adelante el "local").

8. El contrato entre las partes requería que, en caso de emergencia, Ranger llamara al Sr. Manuel Báez Vega. De este no contestar, el contrato requería que se llamara a Manuel Báez Pérez, José E. Pérez, Anastasio Ayala o Carlos Rosario.

9. La entrada del edificio donde ocurren los hechos queda en la esquina de la Calle Borinquen y Calle 10 y tiene un "rolling door".

10. La pared lateral contigua a la calle 10 solo tiene una ventana que empieza a mitad de pared y el resto es pared en concreto.

11. Al cierre de operaciones, se cerraban todos los candados y los "rolling doors".

12. Una vez cerrados los "rolling doors", no hay visibilidad hacia el interior del negocio.

13. La parte posterior de la estructura es una pared completa hasta el segundo piso, sin ventanas.

14. Del lado opuesto a la calle 10 está la Funeraria Arocho.

15. El local tenía cámaras de seguridad en el interior las cuales se podían accesar de manera remota a través del celular.

16. El día de los hechos, el internet del local no estaba funcionado, por lo que Manuel Báez Pérez puso una orden de servicio a Aeronet, la compañía de internet, mas esta quedó pendiente para el lunes a primera hora.

17. La única parte demandante que tenía relación contractual con Ranger American era Báez Pérez Inc.

18. Manuel Báez Vega no recuerda si leyó el contrato ni si pidió al vendedor de Ranger American que le explicara sus términos y condiciones.

19. La pared por la cual los malhechores hicieron hueco y entraron al negocio no es visible desde la calle.

20. Los malhechores hicieron un hueco de la pared de la funeraria a la pared de la casa de empeño.

21. A la fecha de los hechos, Ranger llamó a Manuel Báez Vega en cuatro (4) ocasiones.

22. En la primera activación de la alarma, el empleado de Ranger American omitió seguir el "call order", es decir, no cumplió con seguir llamando a los clientes.

23. Ranger tenía conocimiento que todas las activaciones de alarma recibidas por Ranger American el 30 de noviembre del 2019 al 1 de diciembre de dicho año relacionadas al Local provenían de sensores que ubicaban en el interior del local.

24. Ranger tenía conocimiento que ninguno de los avisos de alarma en la fecha de los hechos provino de una puerta del local ni las ventanas del local.

25. El personal de Ranger fue quien instaló los sensores de alarma que se activaron en la fecha de los hechos.

26. Ranger American no instaló detectores de calor e incendio en el establecimiento de las partes demandantes.

27. Para la fecha de los hechos Ranger no llamó a la Policía de Puerto Rico para alertarle de los avisos de alarma del local, pues los patrulleros encontraron el exterior del local en orden y sin alteración de tipo alguno.

28. Cuando los patrulleros de Ranger se personaron en el local el día de los hechos, no había visibilidad hacia la parte interior del local ya que estaba cerrado.

29. Entre las 5:24pm del 30 de noviembre de 2019 y la 1:39 del 1 de diciembre de 2019, el sistema de Ranger refleja que ésta recibió cuatro señales de alarma provenientes del establecimiento de los demandantes ("Burglary Alarm").

30. *Zulimar Jiménez era empleada de Ranger y era la operadora de turno el 30 de noviembre de 2019 durante el turno de 9:00 p.m. a 5:00 a.m.*

31. *Durante el turno de Zulimar Jiménez se activó el sistema de alarma en la Joyería Monte Piedad y Casa de Empeño Cashex en tres ocasiones a diferentes horas: 23:44, 4:16 y 01:39.*

32. *Posterior al robo, la operadora de Ranger American, Zulimar Jiménez, fue entrevistada por su supervisor, Oscar Rodríguez, quien preparó un narrativo el 2 de diciembre de 2019.*

33. *Para la fecha de los hechos, Oscar Rodríguez Delgado, era el Gerente de Operaciones de la División del Centro de Mando de Ranger.*

34. *Para la fecha de los hechos, Oscar Rodríguez Delgado era el supervisor de Zulimar Jiménez.*

35. *En el narrativo de Oscar Rodríguez Delgado, éste señaló que se activó el sistema en 3 ocasiones en diferentes horarios y no se le sugirió al cliente a enviar a alguien al lugar para revisar el interior del local con el patrullero.*

36. *En el narrativo de Oscar Rodríguez Delgado, se instruyó a investigar más al detalle las activaciones de alarma debido a que ese cliente nunca recibía activaciones recurrentes y al hecho de que no se sugirió al cliente enviar a alguien junto con el patrullero en respuesta a las múltiples activaciones.*

37. *En el narrativo de Oscar Rodríguez del 2 de diciembre de 2019, este estableció que le indicó a Zulimar Jiménez que se estaban trabajando en automático las activaciones.*

38. *En el narrativo de Oscar Rodríguez del 2 de diciembre de 2019, se le instruyó a Zulimar Jiménez a investigar más al detalle las activaciones.*

39. *En el narrativo de Oscar Rodríguez del 2 de diciembre de 2019, se le instruyó a Zulimar Jiménez a investigar más al detalle las activaciones ya que (1) el establecimiento de la parte demandante no recibía activaciones recurrentes; (2) porque ese día hubo tres activaciones; (3) y porque no se le sugirió a la parte demandante que enviara a alguien con el patrullero.*[12]

No obstante, el TPI determinó que los siguientes hechos estaban en controversia:

1. *Si Ranger American respondió conforme el protocolo y sus obligaciones contractuales, llevando a cabo las gestiones necesarias y razonables ante los avisos de alarma del Local.*

2. *Si Ranger American realizó un patrullaje inadecuado ante los avisos de alarma del Local.*

3. *Si Ranger American asumió voluntariamente un deber extracontractual con las partes demandantes al llevar a cabo representaciones de que tomarían medidas afirmativas para responder los avisos de alarma.*

4. *Si las partes demandantes sufrieron daños por la alegada falta de diligencia e incumplimiento de Ranger American.*

5. *Si las partes demandantes sufrieron daños por la pérdida de negocios o posibilidades debido al incidente en el Local.*

6. *Si las partes demandantes sufrieron daños emocionales debido al incidente en el Local.*[13]

---

[12] *Íd.*, a las págs. 1345 – 1349. *Citas en original omitidas.*
[13] *Íd.*, a la pág.1349. *Citas en original omitidas.*

Basado en lo antes expresado, el TPI declaró *No Ha Lugar* la solicitud de sentencia sumaria y ordenó la continuidad de los procedimientos.

También, **y el mismo día del 8 de abril de 2024**, el TPI emitió otra Resolución en la cual, excluyó la segunda página del contrato y la defensa de relevo de responsabilidad de Ranger American, por haber sido presentadas tardíamente.[14] En lo pertinente, expresó:

> *[e]l tribunal concluye que un relevo de responsabilidad es una defensa afirmativa que al no ser levantada en la contestación a la demanda se da por renunciada, máxime cuando el documento de relevo no fue provisto en el descubrimiento de prueba. Las defensas afirmativas "deben plantearse de forma clara, expresa y específica al responder una alegación o se tendrán por renunciadas, a menos que surja del descubrimiento de prueba los hechos que sustentan la defensa afirmativa, lo que en tal caso deberá presentarse una enmienda a la alegación pertinente sin dilación alguna", cosa que no ocurrió en el caso de epígrafe. De hecho, la mención al relevo de responsabilidad se planteó por primera vez en el Informe de Conferencia con Antelación a Juicio sin que la parte demandada proveyera justificación para no haberla provisto en el descubrimiento de prueba.[15]*

Inconforme, Ranger American presentó una reconsideración el **23 de abril de 2024**.[16]

Tras varios trámites procesales, el TPI emitió y notificó una *Orden* el **26 de abril de 2024**, en la cual declaró *No Ha Lugar* la reconsideración de la sentencia sumaria.[17] De igual modo, el **30 de abril de 2024**,[18] el foro de instancia mantuvo su determinación en cuanto a la exclusión de la segunda página del contrato.[19]

Inconforme con ambas determinaciones, el **28 de mayo de 2024** Ranger American recurrió ante nos y señaló la comisión de los siguientes dos (2) errores:

> **PRIMER ERROR: Cometió error manifiesto el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, al eliminar la segunda página del contrato acogiendo el argumento de la parte demandante sobre supuesta notificación tardía del mismo, y en consecuencia, negarse a considerarla en la solicitud de**

---

[14] Apéndice 66 del Recurso de *Certiorari*, págs. 1337 – 1340.
[15] *Íd.*, a la pág.1340. *Citas en original omitidas.*
[16] Apéndice 69 & Apéndice 70 del Recurso de *Certiorari*, págs. 1353 – 1360, 1361 – 1372.
[17] Apéndice 76 del Recurso de *Certiorari*, pág. 1396.
[18] Notificada el mismo día.
[19] Apéndice 77 del Recurso de *Certiorari*, pág. 1397.

*sentencia sumaria, cuando el contrato es mencionado incluso antes en la demanda, se hizo referencia al mismo durante el descubrimiento de prueba sin reserva alguna de la parte demandante, y sin que esta notificara durante el descubrimiento de prueba que solo tenía la primera página, a pesar de que esa página, que fue estipulada, surgía expresamente que el contrato tenía una página adicional.*

*SEGUNDO ERROR: Incidió el Honorable Tribunal de Primera Instancia, Sala Superior de San Juan, al no incluir en su dictamen determinaciones de hechos que quedaron expresamente incontrovertidos por surgir de admisiones de parte y de documentos estipulados; y omitir analizar el derecho aplicable a los hechos que fue invocado en la solicitud de sentencia sumaria.*

Por su parte, los recurridos–demandantes comparecieron ante nos el **6 de junio de 2024** mediante el escrito intitulado: "*Escrito en cumplimiento de Orden*".

Con el beneficio de la comparecencia de las partes, damos por sometido el asunto.

**-II-**

**-A-**

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[20]

En ese sentido, se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".[21]* Por lo tanto, procederá dictar una sentencia sumaria:

> *[S]i las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que [,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[22]*

---

[20] 32 LPRA Ap. V, R. 36.3 (e); *Bobé v. UBS Financial Services*, 198 DPR 6, 19 – 20 (2017).

[21] *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011).

[22] Regla 36.3 (e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (e).

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[23]

De manera que, un asunto no debe ser resuelto por la vía sumaria cuando:

> *(1) existen hechos materiales y esenciales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.[24]*

La precitada regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[25] El inciso (a) de la Regla 36.3 de Procedimiento Civil, dispone que la moción de la parte promovente deberá contener:

> *(1) Una exposición breve de las alegaciones de las partes;*
> *(2) los asuntos litigiosos o en controversia;*
> *(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> *(4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
> *(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
> *(6) el remedio que debe ser concedido.[26]*

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[27] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos

---

[23] *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 – 18 (2015); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).
[24] *S.L.G. Szendrey-Ramos v. Consejo de Titulares, supra*, a la pág. 167. Énfasis nuestro.
[25] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 431 (2013).
[26] 32 LPRA Ap. V, R. 36.3 (a). Énfasis nuestro.
[27] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).

que refuten los hechos presentados por el promovente.[28] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[29] Después de todo, *"[l]a etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".[30]*

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 de Procedimiento Civil.[31] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[32] Dicha tarea, deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente.[33]

Ahora bien, la inobservancia de las partes con la normativa pautada tiene repercusiones diferentes para cada una. Al respecto, nuestro Tribunal Supremo ha señalado que:

> *[P]or un lado, si quien promueve la moción incumple con los requisitos de forma, el tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar sentencia sumaria a favor de la parte promovente, si procede en derecho. Incluso, si la parte opositora se aparta de las directrices consignadas [en la regla] el tribunal podrá no tomar en consideración su intento de impugnación [de los hechos ofrecidos por el promovente].[34]*

---

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 – 215 (2010).
[29] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).
[30] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 122 (2015).
[31] Regla 36.3 (b)(1) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (b)(1).
[32] *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, a la pág. 432.
[33] *Íd.; Burgos López et al. v. Condado Plaza*, *supra*, a la pág. 17.
[34] *Meléndez González et al. v. M. Cuebas*, *supra*, a la pág. 111.

Entretanto, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[35] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra.*[36] A tenor con lo expuesto, el Tribunal Supremo insular ha pautado lo siguiente:

> *[…] el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. […]*
>
> *[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*[37]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[38]

**-B-**

El recurso de *certiorari* es un medio procesal de carácter discrecional, que a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[39] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[40]

---

[35] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 118; *Vera v. Dr. Bravo,* 161 DPR 308 (2004).

[36] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 118.

[37] *Meléndez González et al. v. M. Cuebas, supra,* a las págs.,118-119.

[38] *Íd.* Énfasis nuestro.

[39] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).

[40] *García v. Asociación,* 165 DPR 311, 321 (2005).

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].*[41]

Todavía más, bajo el carácter de discrecionalidad la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari:*

> (A) *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> (B) *Si la situación de hechos planteada es la más indicada para el análisis del problema.*
> (C) *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
> (D) *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
> (E) *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> (F) *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
> (G) *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[42]

En ese sentido, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> *[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho*

---

[41] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.
[42] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

*sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[43]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable ni perjudica los derechos sustanciales de las partes, deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[44]

**-III-**

En primer orden, Ranger American nos plantea que el TPI erró al excluir la segunda página del contrato y acoger el argumento de que esta fue presentada tardíamente. Aducen que el referido contrato fue mencionado en distintas etapas del proceso. Además, los recurridos–demandantes no notificaran durante el descubrimiento de prueba que solo tenían la primera página; máxime, cuando la primera página fue estipulada y surgía que había una segunda página. En segundo orden, el peticionario–demandado aduce que el foro primario incidió al no incluir en sus determinaciones de hechos, aquellos que fueron expresamente incontrovertidos en la moción de sentencia, ya fueron admisiones de parte o surgieron de los documentos estipulados.

No obstante, al examinar las resoluciones emitidas el 8 de abril de 2024, concluimos que el TPI actuó razonablemente.

Primeramente, el foro primario no erró al declarar *No Ha Lugar* la moción de sentencia sumaria presentada por Ranger. Adoptamos —tanto las determinaciones de hechos materiales en controversia como las incontrovertidas— que obran en la referida *Resolución.* Es decir, existen hechos materiales que están en controversia, e impiden disponer del caso por la vía sumaria a favor del peticionario–demandado. Además, la segunda página del contrato

---

[43] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[44] *SLG Zapata- Rivera v. J.F. Montalvo,* 189 DPR 414, 434 – 435 (2013).

fue excluida y consigo cualquier defensa de relevo de responsabilidad.

Por lo que referente a la exclusión del documento y la defensa afirmativa, somos del criterio que conforme a los hechos del caso y al derecho aplicable, dicha determinación constituye una decisión correcta y razonable dentro del claro ejercicio de discreción conferido a los tribunales de instancia y a su facultad para manejar los casos de la manera que entiendan más adecuada.

Por lo cual, resolvemos que el presente caso no presenta ninguna de las circunstancias contempladas en la referida Regla 52.1 de Procedimiento Civil. Tampoco, surge prueba en el expediente tendente a demostrar que el TPI abusó de su discreción o actuó con prejuicio, parcialidad o error manifiesto. Así, en el ejercicio de la sana discreción que nos permite la Regla 40 del Tribunal Apelaciones, no es irrazonable la continuación de los procesos para que se proceda a dilucidar aquellas cuestiones de credibilidad sobre los asuntos en controversia.

En consecuencia, las determinaciones recurridas merecen nuestra deferencia, por lo que no variaremos los dictámenes.

**-IV-**

Por lo fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones